May it please the Court, Kara Hartzler for the appellant Elizardo Luna-Magdaleno. The two primary issues in this case are whether Mr. Luna-Magdaleno was properly subject to an eight-level sentencing enhancement and whether he had a valid prior order of removal upon which conviction for illegal re-entry could be based. Because both of these issues turn on whether Mr. Luna-Magdaleno has been convicted of an aggravated felony, I'd like to begin by discussing the effect of the Supreme Court's recent decision in De Camp and its effect on this case. In De Camp, the Supreme Court held that the modified categorical approach may not be used when the elements of an overbroad statute are indivisible. And this is very relevant in our case because we have four potential convictions that could be an aggravated felony. However, under De Camp, we would submit that none of those convictions are an aggravated felony. And I'd like to begin with the issue of sentencing. There, I believe we had the issue of whether there were a commercial burglary and a petty theft with a prior that could be an aggravated felony. And if I'm not mistaken, I believe that for sentencing purposes, the government in their 28-J letter conceded that the commercial burglary could not be an aggravated felony. So I'm going to focus on the petty theft with a prior. The enhancement is only proper if this petty theft with a prior was an aggravated felony. However, the definition of California theft includes both consensual takings and non-consensual takings. And only the generic definition of theft is limited to non-consensual takings. So we certainly have a statute here that is overbroad. Now, the question then is, do we go to the modified categorical approach or not? In our opinion, we do not go to the modified categorical approach. And the reason is this. In the statute, there are multiple ways of violating it. And those ways include ways that are not requiring jury unanimity. What that means is that under California theft, the jury instruction that's given basically states that if you are charged with theft, you can be held liable for theft under a variety of theories. And it is not necessary for the jury to determine which of those theories is the one that is settled on. In other words, there's no requirement that a jury be unanimous on the issue of whether the theft involved a consensual taking or a non-consensual taking. Counsel, I have a question. Do we apply the chance retroactively to determine whether or not the conviction is for an aggravated felony? Or do we look at the conviction at the time of the removal order? Your Honor, for purposes of the sentencing, the A-level sentencing enhancement, it certainly would be applied because that's an issue that's decided at the moment. And it is still on appeal. For purposes, I believe you're asking about for the 1326d motion, this Court has held in the Dal Mendoza that you look at the case law as it existed at the time of the removal order for purposes of determining eligibility for relief. And I think that's a very important distinction because in the Dal Mendoza, we were dealing with a situation where the case law that was applied was only applied in the context of determining whether the person was eligible for relief. Now, by contrast, this Court in a case called Camacho-Lopez found that the removability issue was determined by case law that may have been decided after. But that determines whether or not the removal order that's the predicate for the conviction, for the indictment is valid, right? That's true. Well, the way I would distinguish them, Your Honor, is that the Dal Mendoza dealt with eligibility for relief. And Camacho-Lopez dealt with removability. And here we also have in most of the removal orders we're dealing with, we have an issue of removability. And in Camacho-Lopez, the Court decided that the person was not removable because there was a Supreme Court case that subsequently came out called Leocal. Now, Leocal was not in effect at the time of the person's removal order. Nonetheless, this Court held that that case law applied and found that there was a due process violation and that the person was prejudiced as a result. Doesn't that depend on whether or not the subsequent decision clarified the law as opposed to making new law? There certainly, I think, is a lot of gray area that we're all sort of working our way through right now. What we would submit, Your Honor, is that the Dal Mendoza applies to a very narrow set of circumstances. It applies in a situation where this Court has held in a published decision that a certain conviction is or is not an aggravated felony. And there's really no question left. In fact, in Vidal Mendoza, I believe that they were dealing with an en banc decision of this Court in Estrada Espinoza. So it's a very limited situation. It's not to apply when the case law is unclear. It's not to apply when it may just be a BIA decision or an agency decision. Vidal Mendoza was very narrow in terms of stating that it only applied in that situation where you have a Ninth Circuit en banc decision that has held that this is categorically an aggravated felony. So we would not apply it outside of those circumstances. Can I understand your argument about, I guess, is it California Penal Code Section 484? That's correct, Your Honor. Why, I mean, I look at our decision in Rivera, I guess it is, that has already, I think, rejected the argument you're asking us to accept. Do you think DeCamp overruled that case? Yes, Your Honor, we do. Okay. And just, I'm looking at the language of the statute. Help me understand why this is not a, I guess, a divisible statute. Yes. And I think that that's, I've been spending a lot of time trying to unravel DeCamp and figure out what it means. Because in some ways, on its face, 484 does seem to be divisible. It has certain ways. Sure, because it codifies a whole variety of, there are a whole variety of verbs and there are a whole variety of things that are listed that you could steal. So any one of which, divisibly, would support a conviction. Certainly. It does appear to be divisible in terms of having certain statutory phrases that deal with fraud and certain ones that deal with nonconsensual taking. But what I would propose to this Court is that DeCamp actually goes a lot deeper than just statutory phrases. DeCamp goes to the issue of jury unanimity. And if I could actually read to this Court from the very last paragraph of DeCamp, it says, DeCamp may or may not have broken and entered and so committed generic burglary. But the crime of which he was convicted does not require the fact finder, whether jury or judge, to make that determination. Does that apply where there's a guilty plea? Yes, it does. That states the basis for the plea because there is, by definition, unanimity within himself. If he says, I stole thus and such from John Doe, there's no question, there's no opportunity to think that, you know, two-tenths of him had one view and eight-tenths of him had another. I would also point this Court to the third reason that the Supreme Court gave DeCamp for upholding this indivisibility rule. And it was not necessarily based on, you know, a plea versus a jury trial or anything like that. What it held is that a defendant has no incentive to contest facts that were not an element. So, in other words, what it says is a defendant, after all, often has little incentive to contest facts that are not elements of the charged offense and may have good reason not to. Extraneous facts and arguments may confuse the jury and during plea hearings. But that's the jury. That's correct. But I believe that DeCamp was, if I'm not mistaken, a pleaded case. But if the defendant actually admits all of the elements, then what's left to confuse the fact finder? That's where you're losing me on your argument. If the defendant, in fact, cedes all of the elements. Your Honor, it's a basic fundamental fairness issue that the Supreme Court brought up in DeCamp. But how is it fundamentally unfair to enhance the sentence if the defendant has admitted to all of the elements of the offense? Because the defendant may not have intended to admit the elements of exactly what he intended to. . . I'm trying to say this in a way that makes sense. The intendant had no incentive to admit to alternative means of committing the offense that had nothing to do with whether or not he would be convicted. It's that they're not even logically possible. I mean, for example, there's one where he says, I took property from, I forget the person's name, and I willfully obstructed the police officers and I gave them a false name. And, I mean, he just says what he did. And it's inconsistent. What he did is inconsistent with the non-aggravated versions of the crime to defraud somebody of services or something like that. It's just not consistent. But that's precisely what the Supreme Court said in DeCamp, is that when you have a situation where it wasn't necessary for him to admit a particular fact. . . But that's what he did. He's saying what occurred. And there's no plausible alternative in the statute that would be a non-aggravated version given the facts on the ground in this case. I mean, if the guy, you know, took money or headphones or whatever from somebody, that's what he did. And there's no way to have an alternative. Your Honor, under that logic, though, DeCamp would have a different outcome. Because if the person in DeCamp had pleaded guilty, which he did. . . But the statute was different. That is true, Your Honor. But I believe that there is, if you look deeper into this. . . So, I mean, I guess the difference would be here there's nothing extra. In DeCamp, what I understood them to be saying, if all you need is A, B, and C, and you say A, B, C, D, and E, then the D and E might be something that you would have not talked about had you known. . . But it's an indivisible statute, and D and E are irrelevant. And here, you basically have A, B, C, and he stops. And it happens that that's not a helpful A, B, and C for him. I guess I just don't see how DeCamp even applies here. Let's move on then, Your Honor. And let's say that we do go to the modified categorical approach in this case. And in this case, what happened was that he pleaded guilty. . . And for this petty theft of the prior, the plea agreement states, I stole headphones from Target. Now, California has interpreted the term stole or take to include consensual takings. So just by the use of the term steal or take, that's where we also get into a problem. Do you think Target gave him this voluntarily? Well, there's situations in California law where you can write a bad check, and you can take something consensually, but it's still seen as stolen. You can make a reservation for a car rental, and you can go and rent that car.  But Rivera says that an admission to stealing satisfies the element requirements. And we would acknowledge that, Your Honor. However, Rivera did not actually, none of the briefing actually got to the question of whether the terms steal and take are overbroad themselves. It did not consider that issue that we have argued here. And so we would state that it really didn't reach that question. Is there anything in the camp that you think says that steal, the use of the term steal and or take are overbroad in the statute? Not specifically because it wasn't necessarily dealing only with theft. It was dealing with burglary. But one other thing that I would point this Court to is. Well, so then if the Supreme Court did not make that statement, how can we disregard our holding in Rivera? Well, I would actually point this Court to another Supreme Court decision that was decided four years ago. This is Chambers v. United States. And what it says, this is a statute where it actually was divisible into separate statutory phrases. And the Court said, at the same time, we believe the statutory phrases setting forth various kinds of failure describe roughly similar forms of behavior. All amount to variations on a single theme. For that reason, we consider them as together constituting a single category. So that would be a direct Supreme Court statement on point that says, even when they're separate statutory phrases, you still don't necessarily go to the modified categorical approach. You have used more than your time, but we'll give you a minute for rebuttal on the time. I will. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Jerry Benke for the United States. I'll pick up on the discussion that's been going on regarding the applicability of discamps in this case. The government disagrees with the defense's argument that discamps results in the defendant's prior convictions for theft. Have you got the authoritative pronunciation of that case? No, Your Honor. I've pronounced it day camp and drew some criticism for that previously, so I don't know how it's pronounced. Take your pick. We all know what you're talking about. In California, the defense is correct that in California, theft is defined in various ways. California defines theft in Penal Code Section 484. Penal Code Section 484 specifically identifies several different ways that an individual can commit theft in California. What the defense has done is the defense has cited various cases where different courts have simply recognized that, yes, in California theft includes theft by false pretenses. In California, theft includes fraud. In California, theft includes embezzlement. But when you look at 484, the statute that defines theft, 484 does specifically set out those various alternate means of committing theft. So let me ask you this. Are there California cases involving the steal-take-carry-away prong of 484 that have upheld convictions where the taking was with the owner's consent? Not that I'm aware of, Your Honor. The case that was cited in the defense brief related to, I believe it was Williams, that related to a conviction for receipt of stolen property, and the issue there was if the property was obtained by embezzlement or false pretenses, would that qualify? And when you look at 484, which defines theft, those are included as ways of committing theft. What's important is that one of the specific provisions in 484 defines theft as stealing, taking, and carrying away personal property as a separate means from theft by false pretenses, embezzlement, fraud. But the defendant's argument is that even that phrase, steal-take-carry-away, can involve situations in which the property was obtained with the owner's consent. That's what I'm asking. Are you aware of any cases that have held that? No, Your Honor. I'm not aware of any cases that have held that, and our position is that reading the statute that way would violate standard norms for engaging in statutory construction. If you were to read 484 in the way that the defense is suggesting that you should read 484, it would render the rest of the statute superfluous. If steal-take-and-carry-away includes embezzlement, fraud, theft by false pretenses, then there would have been no reason for the California legislature to specifically separate steal-take-and-carry-away from embezzlement, theft by false pretenses, or fraud. But the legislature did. So when you're looking at the statute, you should look at those as independent means of committing theft. And in this particular case, we're not talking about a situation where Mr. Luna Magdaleno was charged just generically with 484. The charge in this case, to which he pled guilty, specifically alleged that he stole, took, and carried away personal property. He then admitted that by, as your honors have pointed out, acknowledging that he stole headphones from, I believe it was a Target store. So here we have a divisible statute that was pled to allege a form of theft that this court held in Rivera does amount to an aggravated felony, and the defendant in his plea specifically admitted to that version of theft. So even under Descamps, the defendant's convictions for theft would still amount to aggravated felonies because we have a divisible statute that was pled and admitted to in a way that establishes the elements of a generic aggravated felony. Counsel, as a procedural matter, there were two issues. One was the motion to dismiss the indictment on the basis that the prior removal orders were not valid, and the second was the enhancement issue. Which of the removal orders is the government relying upon to support the indictment? The government believes that all of the removal orders are sufficient and do support the indictment. However, the issue of the potential applicability of Descamps really only affects the 1997 removal and the 2006 removal. The 2005 removal was based upon the defendant, Mr. Luna Magdaleno's false claim of citizenship in 2004, and in fact the defense doesn't contest his removability as alleged in that 2005 removal proceeding. The only issue regarding the 2005 removal that the defense raises is whether or not the immigration judge failed to advise Mr. Luna Magdaleno of his eligibility for relief. And in this case, he was not eligible for relief. The one form of relief that the defense is relying upon, cancellation of removal, he was statutorily ineligible for because he had previously been convicted of crimes of moral turpitude and several prior offenses for which he had an aggregate term of imprisonment of more than five years. I believe at that point he had served somewhere in the neighborhood of nine years of prison for his prior convictions. Let me ask you this. In order to uphold the validity of the 2005 removal order, do we need to decide whether any of his prior convictions at that point in time were aggravated felonies or not? No, Your Honor. Whether his prior convictions were aggravated felonies or not is one of several arguments in support of the 2005 removal order. But even if this court were to set aside the issue of whether or not his previous convictions were aggravated felonies, the 2005 removal order would still be valid. Just run through those alternative reasons again. The other alternative reasons are he had previously been convicted of crimes of moral turpitude. Which were? At that time, the convictions for theft, he had a 2002 conviction for petty theft with a prior, and he also had prior convictions for commercial burglary, which at that time would have counted as crimes of moral turpitude. In addition, under Section 1182, he would be ineligible if he had multiple prior convictions with an aggregate term of imprisonment exceeding five years. Even if they were not crimes of moral turpitude? Yes, Your Honor. Okay. So for that alternative, all you need to show is convictions of crimes and an aggregate term of imprisonment? Yes, Your Honor. Okay. But again, finally, even if you put to the side those two arguments and get to the issue of eligibility for relief, even if we assume for sake of argument that the immigration judge did in fact err and he was eligible potentially for relief, it's not plausible that he would have been granted cancellation of removal because when you're looking at whether or not an individual should receive cancellation of removal, as this court recently held in Cisneros, the immigration judge is only supposed to look to factors that relate to admissibility. The defendant's employment, family ties, age, and other factors are irrelevant. The only factors are those factors that relate to admissibility. And the immigration judge in the 2005 proceeding asked defendant about any pending petitions. There were none. And more importantly, the immigration judge knew that the defendant had attempted to gain entry into the United States by a false claim to U.S. citizenship. Was withdrawal of his application also one of the forms of relief that he was not advised of? He was not advised of that as well, but he was not eligible for withdrawal because he was still an arriving alien under the statute. But the stuff about his convictions wouldn't deprive him of eligibility for that form of relief, right? No, Your Honor. That is driven simply by the fact that he was an arriving alien. Just that status alone you're saying deprived him of eligibility for withdrawal? Yes. I thought that's exactly when withdrawal was available to arriving aliens. Am I wrong on that? Let me double check. I want to make sure I'm not confusing the two. Let me just tell you where I'm coming from. My notes say that he was eligible for that form of relief, but that you are arguing that it was not plausible he would have received it because he had engaged in fraud in trying to gain entry. Yes, Your Honor, that's correct. I was confusing that with pre-conclusion. This is quite a convoluted scheme there. It is. The statutes are very convoluted. I was confusing it with pre-conclusion voluntary departure. He was not eligible for pre-conclusion voluntary departure. Your Honor is correct. Withdrawal of removal was a potential form of relief, but because of his prior convictions for crimes of moral turpitude and the aggravated terms of imprisonment exceeding five years, he was ineligible. But, again, even if he were eligible, it's not plausible that he would have been granted relief because he attempted to gain entry by false claim to U.S. citizenship, which ordinarily precludes that form of relief. And so the 2005 removal, even putting to the side Des Camps and whether or not his prior convictions were or were not aggravated felonies, is a valid removal. The 2005 removal was reinstated again in 2010 and 2011, so the indictment would stand on the 2005 removal alone. Thank you. Thank you, counsel. We'll give you one minute for rebuttal, Ms. Hartzler. Just very briefly, I'd like to bring to the Court's attention several cases that state that for the purposes of California Penal Code 44, the term taking can include a fraudulent taking. Counsel, would you respond, please, to the assertion that with the 2005 removal, we need not consider the 484 problems at all because there was a false claim of citizenship that underlay the removal order? Your Honor, in terms of deciding, and just briefly, I would say certainly he was eligible for withdrawal of application. We would concede he was not eligible for non-LPR cancellation, but we have argued that he was eligible for non-proton LPR cancellation. So your only argument really with 2005 is whether he was offered some opportunity to apply for relief, but otherwise the basis of that removal order, would you agree with opposing counsel that it does not involve the 484 question? It does not involve the 484 question. That's correct, Your Honor. Okay. That's correct. So essentially we would state that while we agree he was not eligible for non-LPR cancellation, he was eligible for LPR cancellation non-proton. So that is another form of relief that we haven't discussed that I wanted to bring to the Court's attention. Regarding withdrawal of the application for admission, it comes down to a question of when an IJ looks at whether someone should be granted withdrawal of application, it comes to the issue of would it be in the interest of justice. Here we have a situation where a person was absolutely not removable in 1997, and I believe we're almost all in agreement on that. So he, despite having spent a great deal of time in the United States legally with his family, he was unlawfully removed. And were it not for that unlawful removal, every single ground of inadmissibility that was brought against him in 2005 would not have been there. Therefore, it was in the interest of justice for the Court to allow him to withdraw his application for removal. Thank you, counsel. Thank you. The case just argued is submitted. And we...
judges: Graber, Rawlinson, Watford